IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA RAE FAULKENBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-cv-009-DES |
| | ) |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Cynthia Rae Faulkenberry ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but

---

[1] Effective February 17, 2025, Leland Dudek, Acting Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Although the claimant bears the burden of proof through step four, the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On March 6, 2021, Claimant protectively applied for disability insurance benefits under Title II of the Act. (R. 17, 205-08). Claimant alleges she has been unable to work since June 15, 2020, due to grand mal seizures, memory loss, diabetes, neuropathy, depression, anxiety, and headaches. (R. 205, 228). Claimant was 53 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 26, 205). She has a high school equivalent education and past work as an administrative clerk and gambling clerk. (R. 38, 57, 229).

Claimant's claim for benefits was denied initially and on reconsideration, therefore she requested a hearing. (R. 65-99, 123-24). ALJ Doug Gabbard, II conducted an administrative hearing and issued a decision on July 3, 2023, finding Claimant not disabled. (R. 17-26, 32-64). The Appeals Council denied review on November 7, 2023 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Claimant filed this appeal on January 9, 2024. (Docket No. 2).

## III.    The ALJ's Decision

In his decision, the ALJ found Claimant met the insured requirements for Title II purposes through December 31, 2025. (R. 19). The ALJ then found at step one that Claimant had not engaged in substantial gainful activity since her alleged onset date of June 15, 2020. (*Id.*). At step two, the ALJ found Claimant had severe impairments of epilepsy; hernias; and depressive/bipolar, anxiety/obsessive, and neurocognitive disorders. (*Id.*). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20-21).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform a range of medium work as defined in 20 C.F.R. § 404.1567(c) with the following non-exertional limitations:

> occasional climbing, balancing, stooping, kneeling, crouching, and crawling; she must avoid even moderate exposure to hazards such as open flames, unprotected heights, and dangerous moving machinery; she will need less than 1 unscheduled work absence per month due to seizures and headaches; she is also limited to simple, repetitive, and routine work, where her supervision is simple and clear; [s]he is capable of occasional[ ] contact with supervisors and coworkers, but no contact with the public; she will do best in a well-spaced work setting with her own work area, or, where she can frequently work alone; she cannot perform fast-paced work such as work requiring hourly quotas or a specific production rate; she will need regular workbreaks every 2 hours, as normally allowed in competitive work; she should have only occasional, well-explained workplace changes[.]

(R. 21). The ALJ provided a summary of the evidence that went into this finding. (R. 21-24).

At step four, the ALJ concluded that Claimant could not return to her past relevant work. (R. 24). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including janitor, garment hanger, and laundry worker I. (R. 25). Accordingly, the ALJ concluded Claimant was not disabled. (R. 26).

## IV. Issues Presented

Claimant asserts the ALJ erred by: (1) failing to properly evaluate the medical source opinion of consultative examiner Dr. Jenna Miller (Docket No. 15 at 7-11, Docket No. 18 at 2-4); and (2) failing to properly evaluate her subjective symptoms (Docket No. 15 at 12-15, Docket No. 18 at 4-5). The Court finds no reversible error in the ALJ's decision.

V.       Analysis

     A.       **ALJ Properly Evaluated Dr. Miller's Opinion**

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 404.1513(a)(2). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" 20 C.F.R. § 404.1513(a)(2)(ii). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[2] 20 C.F.R.

---

[2] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2).

§ 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(2), (3).

On October 4, 2021, Dr. Miller conducted a consultative mental status examination of Claimant. (R. 795-99). Dr. Miller observed Claimant's affect varied from anxious to constricted. (R. 798). Dr. Miller found Claimant had no indications of loose associations, flight of ideas, or circumstantial or tangential thought processes. (*Id.*). Dr. Miller noted Claimant was oriented to person, place, year, month, day of the week, and date. (*Id.*). Memory testing revealed that Claimant knew her birth date, age, social security number, and 1 of the last 4 presidents; recalled 0 out of 3 objects after 5 minutes but recalled 1 object after a category cue; and could repeat 5 digits forwards, but only 2 digits backwards. (*Id.*). Concentration testing revealed Claimant correctly completed 1 out of 4 attempted subtractions on serial sevens; stopped three times while counting down from 20 to 1, had to be reminded once which number she was on, and omitted two numbers; could complete a 3-step instructional task; and could spell "WORLD" forward and backward. (R. 798-99). Dr. Miller diagnosed Claimant with major depressive disorder, single episode, with moderate anxious distress; adjustment disorder, with anxiety; and unspecified mild neurocognitive disorder. (R. 799). Dr. Miller opined that Claimant: (1) can understand, carry out, and remember instructions involving one and two steps; (2) cannot sustain concentration and persist in work-related activity and maintain a reasonable pace; (3) cannot maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public; and (4) cannot deal with normal work pressure in a competitive work setting. (*Id.*).

In discussing the medical source opinion evidence, the ALJ concluded that Dr. Miller's opinions were somewhat unpersuasive. Specifically, the ALJ adopted Dr. Miller's opinion that

Claimant could perform unskilled work with no public contact, but rejected her opinion that Claimant could not sustain concentration, work at a reasonable pace, maintain social interactions on a consistent and independent basis, and deal with normal work pressures. (R. 21, 24). The ALJ explained these limitations were not supported by Dr. Miller's own mental status examination, which was normal except for some concentration and memory difficulty. (R. 24). The ALJ also found these limitations inconsistent with Claimant's limited and conservative treatment of record. (*Id.*).

Claimant asserts the ALJ ignored relevant findings from Dr. Miller's mental status examination, specifically, Dr. Miller's precise findings with respect to Claimant's memory and concentration testing and her notation that Claimant was delayed in responding to questions. (Docket No. 15 at 10). Claimant's arguments are belied by the record.

It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to h[is] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). However, the ALJ is not required to discuss each piece of evidence in the record in detail. *See id.* at 1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Although the ALJ did not specifically discuss Dr. Miller's exact examination findings, he did note that Dr. Miller's mental status examination indicted "some concentration difficulty and memory difficulty." (R. 24). Moreover, the ALJ specifically explained that he included psychologically based limitations in the RFC to account for Claimant's memory

and concentration issues. (R. 23). Thus, while the ALJ did not agree with Dr. Miller that Claimant was precluded from concentrating, maintaining pace, or socializing, the ALJ nonetheless included numerous limitations in the RFC to account for Claimant's memory and concentration difficulty. Claimant fails to explain how Dr. Miller's detailed test results or observations demonstrate greater RFC limitations than the ALJ identified. Because Claimant points to no evidence the ALJ failed to consider, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

In sum, the ALJ summarized Dr. Miller's consultative examination findings, correctly concluded they indicated memory and concentration difficulty, and explained that he included psychologically based limitations in the RFC to account for Claimant's memory and concentration difficulty. The ALJ was not required to do more.

### B. ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms

Claimant next contends the ALJ erred in evaluating her subjective symptoms, specifically arguing the ALJ failed to offer a sufficient discussion or justification for discounting her symptoms.

The ALJ is required to consider Claimant's subjective complaints, or symptoms[3] in determining the RFC. 20 C.F.R. § 404.1529(a) & (d)(4). The Commissioner uses a two-step process when evaluating a claimant's symptoms.[4] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25,

---

[3] Symptoms mean a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. § 404.1502(i).

[4] Tenth Circuit precedent characterizes this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to

2017); *see also* 20 C.F.R. § 404.1529. First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. SSR 16-3p at *3. Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's ability to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

---

produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin,* 662 F. App'x 593-94 (10th Cir. 2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

The Court finds no error in the ALJ's consistency analysis. The ALJ summarized Claimant's subjective symptoms and limitations in his decision. (R. 22-23). He specifically acknowledged Claimant's allegations that she has difficulty walking and standing; requires frequent bathroom breaks; experiences memory loss and racing thoughts; has difficulty concentrating; has difficulty understanding and following directions; experiences daily headaches; and cannot get along with others. (R. 22). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (*Id.*). In reaching this conclusion, the ALJ discussed numerous inconsistencies between Claimant's subjective complaints and the evidence of record, including: (1) the effectiveness of medication in treating Claimant's seizures; (2) the normal CT scan of Claimant's brain; (3) the unremarkable physical examinations in 2020, 2021, and 2022 showing normal range of motion; (4) the normal mental status examinations; (5) the lack of mental health complaints in November 2020; (6) Claimant's limited mental health-related treatment; and (7) Claimant's daily marijuana use. (R. 22-23). The Court finds ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, SSR 16-3p, and the regulations. Claimant simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan,* 552 F.3d at 1185 (10th Cir. 2008). Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.* Claimant's arguments again amount to a request that the Court reweigh the evidence and interpret it in her favor, which the Court cannot do. *Hackett,* 395 F.3d at 1172.

Claimant further asserts the ALJ improperly discounted her symptoms based on her failure to seek medical care without considering the impact losing insurance had on her ability to obtain treatment. Although the ALJ's use of this reasoning is questionable, the decision makes clear that the ALJ did not base his entire consistency analysis on Claimant's failure to seek medical care. As set forth above, the ALJ provided numerous <u>other</u> reasons supported by the record to discount Claimant's subjective symptoms, which Claimant does not challenge, and the balance of the consistency analysis is thus supported by substantial evidence. *See, e.g., Branum v. Barnhart,* 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's [consistency] analysis is supported by substantial evidence in the record.").

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 26th day of March, 2025.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE